**Benjamin Franklin FLOYD, Appellant,**

**v.**

**The STATE of Texas, State.**

**No. 2–96–414–CR.**

Court of Appeals of Texas,
Fort Worth.

Jan. 8, 1998.

Leon Haley, Fort Worth, for Appellant.

Tim Curry, Criminal District Attorney, John A. Stride, Assistant Criminal District Attorney, Fort Worth, for Appellee.

Before CAYCE, C.J., and BRIGHAM and HOLMAN, JJ.

## OPINION

BRIGHAM, Justice.

Benjamin Franklin Floyd appeals his conviction by a jury of the offense of aggravated sexual assault of a child. The jury assessed punishment at life imprisonment in the Texas Department of Criminal Justice, Institutional Division, and a fine of $10,000. In seven points, appellant complains of the factual sufficiency of the evidence, asserts that he was denied a speedy trial, and challenges both the competency of the child victim to testify and the admissibility of an expert's testimony. We affirm.

## SUFFICIENCY OF THE EVIDENCE

■■■ Appellant concedes that the evidence is legally sufficient, but challenges its factual sufficiency. This court has the authority to review fact questions in criminal cases. *See Clewis v. State*, 922 S.W.2d 126, 129–30 (Tex.Crim.App.1996). In reviewing the factual sufficiency of the evidence to support a conviction, we are to view "all the evidence without the prism of 'in the light most favorable to the prosecution.' " *Id.* at 129 (citing *Stone v. State*, 823 S.W.2d 375, 381 (Tex.App.—Austin 1992, pet. ref'd, untimely filed)). We may only set aside the verdict if it is so contrary to the overwhelming weight of the evidence as to be clearly wrong and unjust. *See id.* In performing this review, we are to give "appropriate deference" to the fact finder. *Id.* at 136.

The elements of aggravated sexual assault relevant to this cause are: a person; intentionally or knowingly; causes the anus of a child to contact the mouth, anus, or sexual organ of another person, including the actor;

and the victim is younger than fourteen years of age. TEX. PENAL CODE ANN. § 22.021(a)(1)(B)(iv) (Vernon 1994 and Supp. 1998); *O'Hara v. State*, 837 S.W.2d 139, 141 (Tex.App.—Austin 1992, pet. ref'd).

■■ The complainant in this case was appellant's nine year old nephew, A.F. A.F. spent the night of August 1, 1994 with appellant and appellant's twelve year old son nicknamed "Bear." A.F.'s father dropped him off and he went into the garage.

A.F. testified that when he went into the garage, the appellant was standing just a few feet away with his penis exposed and he was masturbating. After appellant ejaculated, A.F. joined appellant and his son Bear in the living room. A.F. lay on the floor and appellant, who had undressed, performed anal intercourse on A.F. Appellant ejaculated again. A.F. ran out into the front yard in an attempt to escape, but appellant and Bear followed him.

A.F. stood naked by a big tree until appellant arrived and placed around his neck a yellow rope that was hanging from the tree. Bear held his feet. Appellant, Bear, and A.F. were naked.

Bear and A.F. then went to appellant's bed. A.F. remained naked and appellant had anal intercourse with him again. Meanwhile, Bear engaged in anal intercourse with appellant. Appellant threatened A.F. that if he told anyone about the events that he would kill him.

The next morning, A.F.'s father picked him up; however, A.F. was too scared to tell his father what had happened. A.F. later told his Aunt Cissy that appellant had not done anything to him because he was scared appellant would kill him. Appellant's mother, Sylvia Wilson, testified that A.F. told her during a telephone conversation that "Uncle Ben did not do this" or "Grandma, I need to tell you that this didn't happen." On direct examination, Ms. Wilson testified that she asked A.F. about the charges against appellant. On cross examination, she testified that A.F. was not responding to any question asked by her.

The appellant's son, Bear, was granted immunity. He testified that he lived with

appellant on Canyon Trail in Lake Worth on August 1, 1994. He remembered the night that A.F. visited. He saw appellant engaging in anal intercourse with A.F. in a bedroom. A.F. was crying. One of the trees in the front yard had a yellow rope hanging from its branches. He also saw A.F. in the garage with appellant. Bear denied joining his father and A.F. on the bed and denied removing his clothes. Bear was afraid of appellant.

William Harry Mowery, Jr., who lived next door to appellant in August of 1994, had seen children playing in appellant's front yard with ropes hanging from the tree branches.

A.F.'s father's girlfriend, Swanda Horner, saw A.F., with his genitals exposed, "humping" from behind his younger half-brother Travis in March of 1995. When Swanda asked him about it, A.F. became emotional but would not explain to her why he was behaving in that manner. A.F.'s father later asked him about it. A.F., who was crying and upset, told his father that appellant had done the same thing to him. His father then called the police. A.F. was crying and repeatedly saying: "He's gonna kill me." Swanda understood that A.F. was scared of appellant. A.F. subsequently drew a picture of what appellant did to him. Swanda mailed the picture to the District Attorney's Office. She also took A.F. to see Dr. Jan Lee Lamb.

Dr. Lamb, a physician at Cook's Children's Medical Center who specializes in child maltreatment issues, examined A.F. two years after the offense. She did not find any physical evidence that penetration had occurred. As a result of interviewing A.F., however, she believed that he was disassociating to protect his own feelings—a frequent consequence of sexual abuse.

Cleveland Plimpton, an investigator for the District Attorney's office, testified that he was present when A.F. first revealed to the prosecutors that appellant had penetrated him. A.F. also told Investigator Plimpton that appellant and Bear tied him to appellant's bed and appellant tried to stick his penis in A.F.'s mouth. A.F. further explained that while he was hanging from the rope in the tree, appellant masturbated him.

According to A.F., appellant was hitting and kicking him throughout the evening.

■ A.F. admitted at trial that some of what he told Investigator Plimpton was not true; however, he reiterated that everything he testified to in court was true. Based on this admission, appellant now argues that the evidence cannot be factually sufficient. We disagree. It is for the trier of fact to assess the credibility of the witnesses and the weight to be given their testimony. *Chambers v. State*, 805 S.W.2d 459, 461 (Tex.Crim. App.1991). It was undisputed that A.F. was nine years old on the night he was assaulted. Both A.F. and Bear testified at trial that appellant's penis penetrated A.F.'s anus. We find that the evidence supporting the jury's verdict was factually sufficient and not so contrary to the overwhelming weight of the evidence as to be clearly wrong and unjust. Points one and two are overruled.

## SPEEDY TRIAL

Appellant argues that his right to a speedy trial was violated because he was reindicted and tried on the more serious charge of aggravated sexual assault as a result of an interview with A.F. shortly before trial in which A.F. alleged for the first time that appellant had sodomized him. Prior to that interview, appellant had been charged only with the offense of indecency with a child based on an allegation of fondling.

■ The Sixth Amendment to the United States Constitution, applied to the states through the Fourteenth Amendment, guarantees the right to a speedy trial. *See Klopfer v. North Carolina*, 386 U.S. 213, 223–24, 87 S.Ct. 988, 993–94, 18 L.Ed.2d 1, 8 (1967); *Clarke v. State*, 928 S.W.2d 709, 712 (Tex. App.—Fort Worth 1996, pet. ref'd). The Texas Constitution also guarantees the right to a speedy trial. *See* TEX. CONST. art. I, § 10. The test under both the federal and state constitutions is the same. *See Hull v. State*, 699 S.W.2d 220, 221 (Tex.Crim.App. 1985); *Clarke*, 928 S.W.2d at 712.

■ When analyzing a trial court's decision to grant or deny a speedy trial claim, the appellate court must balance four factors: the length of the delay, the reasons for the

delay, the defendant's assertion of the right, and prejudice to the defendant resulting from the delay. *See Barker v. Wingo*, 407 U.S. 514, 530, 92 S.Ct. 2182, 2192, 33 L.Ed.2d 101, 116–17 (1972). The appellate court's review is de novo. *See Johnson v. State*, 954 S.W.2d 770, 771 (Tex.Crim.App.1997); *Clarke*, 928 S.W.2d at 713.

### Length of the Delay

█ Although no specific length of time triggers a speedy trial analysis, the Court of Criminal Appeals notes that some courts presume that a delay of eight months or longer is prejudicial. *See Harris v. State*, 827 S.W.2d 949, 956 (Tex.Crim.App.), *cert. denied*, 506 U.S. 942, 113 S.Ct. 381, 121 L.Ed.2d 292 (1992). In other cases, delays of three to four years have been upheld. *See Clarke*, 928 S.W.2d at 713 and cases cited therein. When considering the length of the delay, the court should look at the peculiar circumstances of each case. *See Barker*, 407 U.S. at 530, 92 S.Ct. at 2184, 33 L.Ed.2d at 117; *Orosco v. State*, 827 S.W.2d 575, 576 (Tex.App.—Fort Worth, pet. ref'd), *cert. denied*, 506 U.S. 960, 113 S.Ct. 425, 121 L.Ed.2d 347 (1992).

█ The delay in speedy trial claims is measured from the time the defendant is formally accused or arrested. *See Santallan v. State*, 922 S.W.2d 306, 307 (Tex.App.—Fort Worth 1996, pet. ref'd). Appellant was first indicted on June 29, 1995. He was reindicted on June 9, 1996, and his trial began on July 29, 1996. He claims to have been arrested on March 3, 1995; however, there is insufficient evidence in the record to confirm this. Nevertheless, neither thirteen months (from the date of the first indictment) nor seventeen months (from the date of the alleged arrest) is, *per se*, a deprivation of appellant's right to a speedy trial. *See Orosco*, 827 S.W.2d at 576. It is, however, lengthy enough to trigger further consideration of appellant's speedy trial claim. *Id.*

### Reason for the Delay

█ Once the court determines that the length of the delay triggers a speedy trial analysis, it is the State's burden to justify this delay. *See Emery v. State*, 881 S.W.2d

702, 708 (Tex.Crim.App.1994); *Clarke*, 928 S.W.2d at 714. In considering the reasons for the delay, different weight should be assigned different reasons. *See Orosco*, 827 S.W.2d at 576. While some delays are attributable to the State attempting to hamper the defense and other justifiable delays arise because of missing witnesses, most delays arise from neutral events, such as overcrowded dockets, which weigh less heavily against the State. *Id.*

The record contains minimal explanation for the delay. The case was originally set for trial on February 1, 1996. It was reset for April 10, 1996; May 17, 1996; and July 17, 1996. The prosecution interviewed A.F. on May 24, 1996. As a result of new allegations made during the interview, appellant was reindicted on July 9, 1996, less than a month before trial. The case went to trial on July 29, 1996 through August 1, 1996. Neither side filed any motions for continuance. There is nothing in the record to indicate that the State caused the delays. Instead, it appears that the delays arose from neutral events such as a crowded court docket.

### Assertion of the Right

█ A defendant's assertion of his speedy trial right is entitled to strong evidentiary weight in determining whether he is being deprived of the right. *See Clarke*, 928 S.W.2d at 714. Failure to assert the right will make it difficult for a defendant to prove that he was denied a speedy trial. *Id.* Furthermore, the defendant's motivation in requesting a dismissal rather than a prompt trial may attenuate the strength of his claim. *Phillips v. State*, 650 S.W.2d 396, 401 (Tex.Crim.App. [Panel Op.] 1983); *Clarke*, 928 S.W.2d at 714.

█ Appellant's attorney filed a motion for speedy trial on January 4, 1996. Even though he was represented by counsel, appellant filed a *pro se* motion for speedy trial on March 11, 1996. The trial court was not required to consider the *pro se* motion when appellant was represented by counsel. *See Ashcraft v. State*, 900 S.W.2d 817, 831 (Tex.App.—Corpus Christi 1995, pet. ref'd [1st pet.], pet. dism'd [2nd pet.]). There is noth-

ing in the record to indicate appellant asked for a hearing on the motions for speedy trial at any time prior to July 29, 1996, the day of jury selection. *See Edwards v. State,* 867 S.W.2d 90, 95–96 (Tex.App.—Corpus Christi 1993, no pet.) (defendant failed to make trial court aware that he was asserting his right to a speedy trial).

On July 19, 1996, appellant's counsel filed a motion to set aside the indictment for failure to afford the constitutional right to a speedy trial and a motion to dismiss under the Speedy Trial Act.[1] These latter two motions, which were filed ten days before trial, requested that the indictment against him be set aside and dismissed, not that he be given a speedy trial.

■ Appellant did not assert his right to a speedy trial until six months after he was indicted and until ten months after he claims he was arrested. He went to trial six months after he first asserted his right to a speedy trial. Moreover, when trial became a reality, he moved for a dismissal of the indictment. Under these circumstances, appellant has failed to timely and fully assert his right to a speedy trial.

### Prejudice Caused by the Delay

■ Trial delay can be harmful in three ways: (1) the pretrial incarceration may be oppressive; (2) the accused may be unduly subjected to anxiety and concern; or (3) the accused's defense may be impaired. *See Barker,* 407 U.S. at 532, 92 S.Ct. at 2193, 33 L.Ed.2d at 117–18; *Clarke,* 928 S.W.2d at 715–16. It is the defendant's burden to make a prima facie showing of prejudice. Once the defendant does so, it is the State's "obligation of proving that the accused suffered no serious prejudice beyond that which ensued from the ordinary and inevitable delay." *Clarke,* 928 S.W.2d at 716, quoting *Ex parte McKenzie,* 491 S.W.2d 122, 123 (Tex. Crim.App.1973).

■ Appellant claims he was harmed because he was prosecuted and convicted for a far more serious offense, aggravated sexual assault of a child, which was added in the reindictment shortly before trial. Accordingly, appellant asserts that the State gained not only a tactical but also a strategic advantage over the defendant through the delay of the trial.

Appellant argues that the State offers no explanation for why it could not have gone to trial on the original indictment which charged only indecency with a child by fondling. There is nothing in the record to indicate that the State was ever opposed to an earlier trial setting or unprepared to go to trial on the original indictment. Instead, when the State began preparing witnesses for trial, the child victim made an additional outcry and revealed to the prosecutors that appellant had sodomized him. There is nothing to indicate that the State obtained this information as a result of the delay, or that the information would not have otherwise come out if the case had been tried sooner. Nor is there any evidence that the appellant's defense was hampered by this new information obtained shortly before trial. The original indictment and reindictment were both based on the events occurring at appellant's home on August 1, 1994.

Appellant also asserts that he was harmed by being "incarcerated at various times for lengthy periods." Even though the record reflects that appellant was apparently in and out of jail pending trial, we cannot determine from the evidence in the record when or how long appellant was actually incarcerated. Thus, we cannot say whether he was prejudiced by any such incarceration. Furthermore, appellant makes the general statement that he "has suffered from pre-trial anxiety," but he does not otherwise explain how this anxiety has affected or prejudiced him.

Balancing these factors, we find that there was no violation of appellant's right to a speedy trial. Points three and four are overruled.

### COMPETENCY OF CHILD WITNESS

Appellant complains on appeal that A.F., the child complainant, was incompetent to

---

1. In 1987, the Court of Criminal Appeals held the Speedy Trial Act unconstitutional. *Meshell v.* *State,* 739 S.W.2d 246, 257 (Tex.Crim.App.1987).

testify. At trial, however, he objected during the State's direct examination of A.F. on the basis that A.F. was not "competent to be properly cross-examined." The trial court replied: "Well, as far as the Court's concerned, the child has not been turned over to you for cross examination at this point in time. That being the case, I'm going to deny your [objection]." At the conclusion of the State's direct examination, appellant's counsel proceeded to cross-examine A.F. and did not raise any subsequent objections to A.F.'s competency.

 Because appellant's trial objection does not comport with the issue raised on appeal, we find that he has preserved nothing for our review. *See Penry v. State*, 903 S.W.2d 715, 763 (Tex.Crim.App.1995), *cert. denied*, 516 U.S. 977, 116 S.Ct. 480, 133 L.Ed.2d 408 (1996). Point five is overruled.

### ADMISSIBILITY OF EXPERT'S TESTIMONY

Appellant raises two challenges to the admission of testimony from the State's expert: hearsay and an alleged lack of credentials.

 The State's expert, Dr. Jan Lamb, is a pediatrician at Cook's Children's Medical Center who specializes in child maltreatment and abuse issues. She testified that Swanda Horner brought A.F. in for an examination. While interviewing Ms. Horner to obtain A.F.'s medical history, Ms. Horner told Dr. Lamb that A.F. had been sexually assaulted by appellant one to two years earlier. Dr. Lamb testified that Ms. Horner's statement was made for the purposes of medical diagnosis and treatment. Therefore, it falls within a hearsay exception: "statements made for the purposes of medical diagnosis or treatment and describing medical history, or past or present symptoms, pain, or sensations, or the inception or general character of the cause or external source thereof insofar as reasonably pertinent to diagnosis or treatment" are admissible. Tex.R.Crim.Evid. 803(4); *Fleming v. State*, 819 S.W.2d 237, 247 (Tex.App.—Austin 1991, pet. ref'd)[2]. Point six is overruled.

 Dr. Lamb also testified that A.F. exhibited characteristics of someone suffering from sexual abuse accommodation syndrome and post traumatic stress disorder. Appellant objected that Dr. Lamb was not qualified to so testify. After Appellant's objection was sustained, the State inquired further into Dr. Lamb's qualifications to testify about these two medical conditions. The appellant's attorney then cross-examined the expert, but made no further objections to the expert's qualifications. We find that the State cured any error concerning the expert's qualifications through its further examination of the expert. Furthermore, appellant abandoned his objection when he did not further complain to the trial court after the State qualified the witness. *Long v. State*, 823 S.W.2d 259, 279 (Tex.Crim.App. 1991), *cert. denied*, 505 U.S. 1224, 112 S.Ct. 3042, 120 L.Ed.2d 910 (1992). The trial court did not abuse its discretion in determining that Dr. Lamb was qualified to be an expert and in admitting her testimony. *Kerr v. State*, 921 S.W.2d 498, 502 (Tex.App.—Fort Worth 1996, no pet.). Point seven is overruled.

The judgment of the trial court is affirmed.

---

2. Furthermore, appellant was timely notified of the State's intention to offer outcry testimony, and to the extent Dr. Lamb testified about A.F.'s outcry, it was properly admitted.