TURNER V. STATE

 

COURT OF APPEALS

SECOND DISTRICT OF TEXAS

FORT WORTH

NO. 2-05-427-CR

RONNIE TURNER APPELLANT

V.

THE STATE OF TEXAS STATE

------------

FROM CRIMINAL DISTRICT COURT NO. 3 OF TARRANT COUNTY

------------

MEMORANDUM OPINION
(footnote: 1)

------------

I. Introduction

Appellant Ronnie Turner appeals his conviction and forty-five-year sentence for aggravated robbery.  In his sole point, appellant argues that the evidence is factually insufficient to sustain his conviction for aggravated robbery because the witnesses failed to identify him as the robber.  We affirm.

II. Background Facts

At around 10:00 a.m. on July 16, 2004, Cesar Salinas was walking on  Vickery Drive in Fort Worth.  As Cesar walked through a car wash’s driveway, he noticed a “teal, sort of greenish-type color” Pontiac Grand Am parked in a stall.  A man wearing dark shorts, a white shirt, and a bandana on his head stood next to the car.  Cesar, who saw the man’s face, later identified him as appellant.  Moments later, as Cesar stood by the entrance to the Quick Mart next door, the man walked within a few feet of Cesar and entered the store.

Ketsana Mehra, a store clerk who was scanning grocery orders inside the front door, glanced at the man and noticed that he was not a regular customer. Ketsana noticed that the man was clean shaven, wore shorts, and wore a bandana that covered one eye.

At the same time, Saroj Mehra, who was working behind the cash register counter, finished waiting on a customer.  Before she could close the register from the previous transaction, the man Ketsana had noticed earlier placed beer on the counter, held up a revolver, and demanded money.  Etsuko LeFleur, Saroj’s friend, was also behind the counter and witnessed the offense. Frightened that the man might shoot them, the two women remained quiet and permitted the man to take the cash drawer and walk out of the Quick Mart.

Cesar, still near the Quick Mart, saw the man leave the store and walk towards the car wash carrying a “cash drawer with money . . . [and] a 12-pack of Coors Light beers.”  Moments later, “two ladies” came out of the store and said that they had just been robbed.  Cesar, in response, tried to get the car’s license number, but was only able to report to police that the first numbers were 6-3.  Later that day, Cesar identified appellant in a six-man photographic line-up that Detective Don Owings showed him. 

Also on July 16, 2004, police officers arrested appellant, who was driving a teal Pontiac Grand Am with license plate numbers that began 6-1.  The officers did not find the money, beer, or revolver in appellant’s car.

A grand jury indicted appellant for aggravated robbery on October 13, 2004.  On November 2, 2005, a jury found appellant guilty of the charged offense.  On the same day, the trial court assessed appellant’s punishment and sentenced him to forty-five year’s confinement.

III. Factual Sufficiency

In his sole point, appellant complains that the evidence is factually insufficient to sustain his conviction of aggravated robbery.  Specifically, appellant argues that neither the clerks’ nor Cesar’s identification testimony was believable, and that their testimony was so weak and full of discrepancies that the jury’s verdict based on it was unjust.

A.  Standards of Review

In reviewing the factual sufficiency of the evidence to support a conviction, we are to view all the evidence in a neutral light, favoring neither party.  
See Zuniga v. State
, 144 S.W.3d 477, 481 (Tex. Crim. App. 2004).  The only question to be answered in a factual sufficiency review is whether, considering the evidence in a neutral light, the fact finder was rationally justified in finding guilt beyond a reasonable doubt.  
Id
. at 484.  There are two ways evidence may be factually insufficient:  (1) when the evidence supporting the verdict or judgment, considered by itself, is too weak to support the finding of guilt beyond a reasonable doubt; or (2) when there is evidence both supporting and contradicting the verdict or judgment and, weighing all of the evidence, the contrary evidence is so strong that guilt cannot be proven beyond a reasonable doubt.  
Id
. at 484-85.  “This standard acknowledges that evidence of guilt can ‘preponderate’ in favor of conviction but still be insufficient to prove the elements of the crime beyond a reasonable doubt.”  
Id
. at 485.  In other words, evidence supporting a guilty finding can outweigh the contrary proof but still be insufficient to prove the elements of an offense beyond a reasonable doubt.  
Id
.   In performing a factual sufficiency review, we are to give deference to the fact finder’s determinations, including determinations involving the credibility and demeanor of witnesses.  
Id.
 at 481; 
Cain v. State
, 958 S.W.2d 404, 407 (Tex. Crim. App. 1997).  We may not substitute our judgment for the fact finder’s.  
Zuniga, 
144 S.W.3d at 482.  

A proper factual sufficiency review requires an examination of all the evidence.  
Id
. at 484, 486-87.  An opinion addressing factual sufficiency must include a discussion of the most important and relevant evidence that supports the appellant’s complaint on appeal.  
Sims v. State
, 99 S.W.3d 600, 603 (Tex. Crim. App. 2003).

B.  Applicable Law

A person commits robbery if, in the course of committing a theft, with the intent to obtain or maintain control of the property, he intentionally or knowingly threatens or places another in fear of imminent bodily injury or death.  
Tex. Penal Code Ann.
 § 29.02(a)(2) (Vernon 2003).  A person commits aggravated robbery if he commits robbery and uses or exhibits a deadly weapon.  
Id
. § 29.03(a)(2).
 

C.  Analysis

In his challenge to the factual sufficiency of the evidence, appellant argues that Ketsana’s, Saroj’s, and Etsuko’s testimony identifying appellant as the robber were impeached by Detective Owings’s and Officer Robert Ellis’s testimony.  Since Etsuko testified at trial that she could not identify the robber, however, only the discrepancies between the officers’, Ketsana’s, and Saroj’s testimony merit consideration here.  Appellant also asserts that Cesar’s testimony was inconsistent and not credible.

At trial, Officer Ellis testified that after he arrived at the store, he spoke with Ketsana, Saroj, and Etsuko, who were all visibly scared and upset.  Officer Ellis also testified that a “couple” of the witnesses described “the person who entered the store,” but he could not recall the details of the descriptions at trial.

Detective Owings testified that as part of his investigation at the Quick Mart, he spoke with Saroj and “might have talked to [Ketsana] briefly.”  Saroj, who appeared “very upset,” informed Detective Owings that “she was not able to identify” the robber.  Detective Owings noted that “[Saroj] didn’t look up” at the robber during the offense.

During the initial investigation, Detective Owings also believed that Ketsana and Etsuko would not be able to identify the robber.  Because all three witnesses “were very upset, extremely upset, crying, [and] grabbing ahold of each other,” Officer Owings did not show them a photographic lineup. 

Ketsana testified that the store’s security cameras were not working on the day of the robbery.  When the robber entered the store, Ketsana, who had been scanning grocery orders by the Quick Mart’s front door, did not recognize him as a regular customer.  She did notice, however, that the man was clean shaven, wore shorts, and wore a bandana that covered one eye.  By the time Ketsana looked towards the register to ensure there was not a long line of customers, she could only see the man’s back.  Ketsana also testified that shortly after the man entered the store, she heard
 someone yell “get back, get back, hey, what are you doing,” and looked up to see the man carrying “the Coors Light and the tray of money” out the front door.  Ketsana then saw the man turn left toward the car wash.

Although Ketsana told the prosecutor before trial that she was unsure whether she could identify appellant, during trial Ketsana testified that she was “absolutely sure” that appellant was the robber because his face was “frozen” in her mind.  Ketsana explained that she had not provided appellant’s description to the police because they had only interviewed Saroj.

Saroj testified that she had been working the cash register during the robbery.  After Saroj waited on a customer, but before she closed the cash register drawer, a man placed a six pack of Coors beer on the counter, gestured with his left hand, and said “give me money, give me money.”  Confused, Saroj gestured with her right hand and replied that the man had not yet paid for the beer.  In response, the man held up a revolver.  Frightened that the man might shoot her, and fearing that Ketsana might try to stop the robber, Saroj remained quiet and handed the register drawer to the man.

Saroj testified that she “was so much frozen” after the robbery that she did not remember being interviewed by the police or what she had told them. Saroj, however, maintained that she had looked at the man’s face “two or three times” during the robbery and recognized him at trial.

Appellant asserts that the “employees of this family-owned store” had a motive to fabricate their testimonies.  However, neither appellant nor the record indicates what that motive might be.  The fact that the witnesses’ testimonies were not uniform can be explained in any number of ways, including misunderstandings between the police officers and the witnesses or the effects of shock on the witnesses following the robbery.  
See Sharp v. State
, 707 S.W.2d 611, 614 (Tex. Crim. App. 1986) (holding that a jury can believe part or all of a witness’s testimony even if that testimony has some discrepancies), 
cert. denied
, 488 U.S. 872 (1998).

Appellant also notes that, at trial, he wore a mustache and beard, a suit, and glasses.  Ketsana and Saroj, however, had testified that the robber was clean shaven, wore shorts, and did not wear glasses during the offense.  Therefore, according to appellant, the witnesses simply identified “the only black male seated at a table in the courtroom, in no way matching the description given.”  Despite appellant’s contentions, two out of four witnesses identified him at trial as the robber.  And although a third witness could not identify him at trial, he had identified him in a lineup.  Further, we do not know if Ketsana, Saroj, or Etsuko would have been able to identify appellant immediately after the robbery because the police did not give them the opportunity to do so.  Also, a defendant can easily change his appearance by adding facial hair, glasses, and different clothing.  Just because appellant was lacking these items at the time of the offense does not mean the witnesses could not identify him at trial.  In any event, the jury had the opportunity to reconcile the testimony and determine the relative credibility of each witness.  
See Bottenfield v. State
, 77 S.W.3d 349, 355 (Tex. App.—Fort Worth 2002, pet. ref’d), 
cert. denied, 
539 U.S. 916 (2003); 
Floyd v. State
, 959 S.W.2d 706, 709 (Tex. App.—Fort Worth 1998, no pet.).

Appellant also asserts that Cesar’s testimony was not credible and was full of discrepancies.  Cesar testified that minutes before the robbery, he walked by a car wash and saw a man standing by a “greenish” Pontiac Grand Am. Moments later at the Quick Mark next door, the man walked within several feet of Cesar and entered the store.  Cesar testified that after two minutes, the man exited the store with the cash drawer and beer and walked back towards the car wash.  After “two ladies” came out of the store and said that they had been robbed, Cesar tried to get the Pontiac’s license number.  Appellant was later arrested while driving a teal Grand Am.  Cesar reported that the first numbers were 6-3, and appellant’s actual license number began with K-6-1.

During trial, Cesar admitted that he was unable to identify the robber because sixteen months had passed since the crime.  During questioning by police officers immediately after the robbery, however, Cesar identified appellant in a six-man photographic line-up.  Although Cesar described the robber as “being in [his] twenties” in a written statement, he explained at trial that the assessment was a guess based upon the robber’s clothing, which was similar to what his nephews wore.  Additionally, during Cesar’s later police interview, Cesar told Detective Owings that he believed the robber was really about thirty-nine years old, which was appellant’s exact age at the time of the offense.

Cesar also identified a photograph of the “greenish” car appellant was arrested in as the “exact same model car” that Cesar had seen the robber speed away in.  Appellant notes that a supplemental police report indicated that the Pontiac was actually white.  However, Detective Owings testified that the color of the car given in the report, which he did not prepare, was incorrect and probably a “typo.”

Cesar’s testimony is not, as appellant contends, so “inherently weak as to be incredible,” nor the  “discrepancies . . . so broad and all-encompassing as to make the jury’s verdict based thereon manifestly unjust.”  To the contrary, Detective Owings reconciled one of the discrepancies in Cesar’s testimony by admitting to a probable typo in the police report.  Cesar himself clarified the remaining discrepancies by explaining why he originally stated appellant was in his twenties (because appellant had worn clothes similar to Cesar’s nephews).  Therefore, appellant’s argument regarding Cesar’s testimony is not persuasive.   Giving due deference to the fact-finder’s determination that appellant was sufficiently identified as the robber, and after reviewing all the evidence, we conclude that the evidence is factually sufficient to uphold this finding.  We therefore hold that the evidence, when viewed neutrally, is not so obviously weak or so greatly outweighed by contrary proof that it would not support the finding of guilt beyond a reasonable doubt
.  We overrule appellant’s sole point.

IV. Conclusion

Having overruled appellant’s sole point, we affirm the trial court’s judgment. 

PER CURIAM

PANEL F: LIVINGSTON, WALKER, and MCCOY, JJ.

DO NOT PUBLISH

Tex. R. App. P.
 47.2(b)

DELIVERED: October 5, 2006

FOOTNOTES
1:
See
 
Tex. R. App. P.
 47.4.