COURT
OF APPEALS

                                       SECOND
DISTRICT OF TEXAS

                                                   FORT
WORTH

 

                                        NO.
2-05-427-CR

 

RONNIE TURNER                                                                 APPELLANT

 

                                                   V.

 

THE STATE OF TEXAS                                                                STATE

 

                                              ------------

 

        FROM
CRIMINAL DISTRICT COURT NO. 3 OF TARRANT COUNTY

 

                                              ------------

 

                                MEMORANDUM
OPINION[1]

 

                                              ------------

I. Introduction

Appellant Ronnie Turner
appeals his conviction and forty-five-year sentence for aggravated
robbery.  In his sole point, appellant
argues that the evidence is factually insufficient to sustain his conviction
for aggravated robbery because the witnesses failed to identify him as the
robber.  We affirm.

II. Background Facts








At around 10:00 a.m. on July
16, 2004, Cesar Salinas was walking on 
Vickery Drive in Fort Worth.  As
Cesar walked through a car wash=s driveway, he noticed a Ateal, sort of greenish-type color@ Pontiac Grand Am parked in a stall. 
A man wearing dark shorts, a white shirt, and a bandana on his head
stood next to the car.  Cesar, who saw
the man=s face, later identified him as appellant.  Moments later, as Cesar stood by the entrance
to the Quick Mart next door, the man walked within a few feet of Cesar and
entered the store.

Ketsana Mehra, a store clerk
who was scanning grocery orders inside the front door, glanced at the man and
noticed that he was not a regular customer. Ketsana noticed that the man was
clean shaven, wore shorts, and wore a bandana that covered one eye.

At the same time, Saroj
Mehra, who was working behind the cash register counter, finished waiting on a
customer.  Before she could close the register
from the previous transaction, the man Ketsana had noticed earlier placed beer
on the counter, held up a revolver, and demanded money.  Etsuko LeFleur, Saroj=s friend, was also behind the counter and witnessed the offense.
Frightened that the man might shoot them, the two women remained quiet and
permitted the man to take the cash drawer and walk out of the Quick Mart.








Cesar, still near the Quick
Mart, saw the man leave the store and walk towards the car wash carrying a Acash drawer with money . . . [and] a 12-pack of Coors Light beers.@  Moments later, Atwo ladies@ came out of
the store and said that they had just been robbed.  Cesar, in response, tried to get the car=s license number, but was only able to report to police that the first
numbers were 6-3.  Later that day, Cesar
identified appellant in a six-man photographic line-up that Detective Don
Owings showed him. 

Also on July 16, 2004, police
officers arrested appellant, who was driving a teal Pontiac Grand Am with
license plate numbers that began 6-1.  The
officers did not find the money, beer, or revolver in appellant=s car.

A grand jury indicted
appellant for aggravated robbery on October 13, 2004.  On November 2, 2005, a jury found appellant
guilty of the charged offense.  On the
same day, the trial court assessed appellant=s punishment and sentenced him to forty-five year=s confinement.

III. Factual Sufficiency

In his sole point, appellant complains
that the evidence is factually insufficient to sustain his conviction of
aggravated robbery.  Specifically,
appellant argues that neither the clerks= nor Cesar=s identification
testimony was believable, and that their testimony was so weak and full of
discrepancies that the jury=s verdict based on it was unjust.

A.  Standards of Review













In reviewing the factual
sufficiency of the evidence to support a conviction, we are to view all the
evidence in a neutral light, favoring neither party.  See Zuniga v. State, 144 S.W.3d 477,
481 (Tex. Crim. App. 2004).  The only
question to be answered in a factual sufficiency review is whether, considering
the evidence in a neutral light, the fact finder was rationally justified in
finding guilt beyond a reasonable doubt. 
Id. at 484.  There are two
ways evidence may be factually insufficient: 
(1) when the evidence supporting the verdict or judgment, considered by
itself, is too weak to support the finding of guilt beyond a reasonable doubt;
or (2) when there is evidence both supporting and contradicting the verdict or
judgment and, weighing all of the evidence, the contrary evidence is so strong
that guilt cannot be proven beyond a reasonable doubt.  Id. at 484-85.  AThis standard acknowledges that evidence of guilt can >preponderate= in favor of
conviction but still be insufficient to prove the elements of the crime beyond
a reasonable doubt.@  Id. at 485.  In other words, evidence supporting a guilty
finding can outweigh the contrary proof but still be insufficient to prove the
elements of an offense beyond a reasonable doubt.  Id. 
      In performing a factual
sufficiency review, we are to give deference to the fact finder=s determinations, including determinations involving the credibility
and demeanor of witnesses.  Id. at
481; Cain v. State, 958 S.W.2d 404, 407 (Tex. Crim. App. 1997).  We may not substitute our judgment for the
fact finder=s.  Zuniga, 144 S.W.3d at 482.  

A proper factual sufficiency
review requires an examination of all the evidence.  Id. at 484, 486-87.  An opinion addressing factual sufficiency
must include a discussion of the most important and relevant evidence that
supports the appellant=s complaint
on appeal.  Sims v. State, 99
S.W.3d 600, 603 (Tex. Crim. App. 2003).

B.  Applicable Law

A person commits robbery if, in the course of committing a theft, with
the intent to obtain or maintain control of the property, he intentionally or
knowingly threatens or places another in fear of imminent bodily injury or
death.  Tex.
Penal Code Ann. ' 29.02(a)(2)
(Vernon 2003).  A person commits
aggravated robbery if he commits robbery and uses or exhibits a deadly
weapon.  Id. ' 29.03(a)(2).       

C.  Analysis








In his challenge to the
factual sufficiency of the evidence, appellant argues that Ketsana=s, Saroj=s, and
Etsuko=s testimony identifying appellant as the robber were impeached by
Detective Owings=s and
Officer Robert Ellis=s
testimony.  Since Etsuko testified at
trial that she could not identify the robber, however, only the discrepancies
between the officers=, Ketsana=s, and Saroj=s testimony
merit consideration here.  Appellant also
asserts that Cesar=s testimony
was inconsistent and not credible.

At trial, Officer Ellis
testified that after he arrived at the store, he spoke with Ketsana, Saroj, and
Etsuko, who were all visibly scared and upset. 
Officer Ellis also testified that a Acouple@ of the
witnesses described Athe person
who entered the store,@ but he
could not recall the details of the descriptions at trial.

Detective Owings testified
that as part of his investigation at the Quick Mart, he spoke with Saroj and Amight have talked to [Ketsana] briefly.@  Saroj, who appeared Avery upset,@ informed
Detective Owings that Ashe was not
able to identify@ the
robber.  Detective Owings noted that A[Saroj] didn=t look up@ at the robber during the offense.

During the initial
investigation, Detective Owings also believed that Ketsana and Etsuko would not
be able to identify the robber.  Because
all three witnesses Awere very
upset, extremely upset, crying, [and] grabbing ahold of each other,@ Officer Owings did not show them a photographic lineup. 








Ketsana testified that the
store=s security cameras were not working on the day of the robbery.  When the robber entered the store, Ketsana,
who had been scanning grocery orders by the Quick Mart=s front door, did not recognize him as a regular customer.  She did notice, however, that the man was
clean shaven, wore shorts, and wore a bandana that covered one eye.  By the time Ketsana looked towards the
register to ensure there was not a long line of customers, she could only see
the man=s back.  Ketsana also testified
that shortly after the man entered the store, she heard someone yell Aget back, get back, hey, what are you doing,@ and looked up to see the man carrying Athe Coors Light and the tray of money@ out the front door.  Ketsana
then saw the man turn left toward the car wash.

Although Ketsana told the
prosecutor before trial that she was unsure whether she could identify appellant,
during trial Ketsana testified that she was Aabsolutely sure@ that
appellant was the robber because his face was Afrozen@ in her
mind.  Ketsana explained that she had not
provided appellant=s
description to the police because they had only interviewed Saroj.

Saroj testified that she had
been working the cash register during the robbery.  After Saroj waited on a customer, but before
she closed the cash register drawer, a man placed a six pack of Coors beer on
the counter, gestured with his left hand, and said Agive me money, give me money.@  Confused, Saroj gestured with
her right hand and replied that the man had not yet paid for the beer.  In response, the man held up a revolver.  Frightened that the man might shoot her, and
fearing that Ketsana might try to stop the robber, Saroj remained quiet and
handed the register drawer to the man.








Saroj testified that she Awas so much frozen@ after the robbery that she did not remember being interviewed by the
police or what she had told them. Saroj, however, maintained that she had
looked at the man=s face Atwo or three times@ during the robbery and recognized him at trial.

Appellant asserts that the Aemployees of this family-owned store@ had a motive to fabricate their testimonies.  However, neither appellant nor the record
indicates what that motive might be.  The
fact that the witnesses= testimonies
were not uniform can be explained in any number of ways, including misunderstandings
between the police officers and the witnesses or the effects of shock on the
witnesses following the robbery.  See
Sharp v. State, 707 S.W.2d 611, 614 (Tex. Crim. App. 1986) (holding that a
jury can believe part or all of a witness=s testimony even if that testimony has some discrepancies), cert.
denied, 488 U.S. 872 (1998).








Appellant also notes that, at
trial, he wore a mustache and beard, a suit, and glasses.  Ketsana and Saroj, however, had testified
that the robber was clean shaven, wore shorts, and did not wear glasses during
the offense.  Therefore, according to
appellant, the witnesses simply identified Athe only black male seated at a table in the courtroom, in no way
matching the description given.@  Despite appellant=s contentions, two out of four witnesses identified him at trial as
the robber.  And although a third witness
could not identify him at trial, he had identified him in a lineup.  Further, we do not know if Ketsana, Saroj, or
Etsuko would have been able to identify appellant immediately after the robbery
because the police did not give them the opportunity to do so.  Also, a defendant can easily change his
appearance by adding facial hair, glasses, and different clothing.  Just because appellant was lacking these
items at the time of the offense does not mean the witnesses could not identify
him at trial.  In any event, the jury had
the opportunity to reconcile the testimony and determine the relative
credibility of each witness.  See
Bottenfield v. State, 77 S.W.3d 349, 355 (Tex. App.CFort Worth 2002, pet. ref=d), cert. denied, 539 U.S. 916 (2003); Floyd v. State,
959 S.W.2d 706, 709 (Tex. App.CFort Worth 1998, no pet.).








Appellant also asserts that
Cesar=s testimony was not credible and was full of discrepancies.  Cesar testified that minutes before the
robbery, he walked by a car wash and saw a man standing by a Agreenish@ Pontiac
Grand Am. Moments later at the Quick Mark next door, the man walked within
several feet of Cesar and entered the store. 
Cesar testified that after two minutes, the man exited the store with
the cash drawer and beer and walked back towards the car wash.  After Atwo ladies@ came out of
the store and said that they had been robbed, Cesar tried to get the Pontiac=s license number.  Appellant was
later arrested while driving a teal Grand Am. 
Cesar reported that the first numbers were 6-3, and appellant=s actual license number began with K-6-1.

During trial, Cesar admitted
that he was unable to identify the robber because sixteen months had passed
since the crime.  During questioning by
police officers immediately after the robbery, however, Cesar identified
appellant in a six-man photographic line-up. 
Although Cesar described the robber as Abeing in [his] twenties@ in a written statement, he explained at trial that the assessment was
a guess based upon the robber=s clothing, which was similar to what his nephews wore.  Additionally, during Cesar=s later police interview, Cesar told Detective Owings that he believed
the robber was really about thirty-nine years old, which was appellant=s exact age at the time of the offense.

Cesar also identified a
photograph of the Agreenish@ car appellant was arrested in as the Aexact same model car@ that Cesar had seen the robber speed away in.  Appellant notes that a supplemental police
report indicated that the Pontiac was actually white.  However, Detective Owings testified that the color
of the car given in the report, which he did not prepare, was incorrect and
probably a Atypo.@








Cesar=s testimony is not, as appellant contends, so Ainherently weak as to be incredible,@ nor the  Adiscrepancies . . . so broad and all-encompassing as to make the jury=s verdict based thereon manifestly unjust.@  To the contrary, Detective
Owings reconciled one of the discrepancies in Cesar=s testimony by admitting to a probable typo in the police report.  Cesar himself clarified the remaining
discrepancies by explaining why he originally stated appellant was in his
twenties (because appellant had worn clothes similar to Cesar=s nephews).  Therefore,
appellant=s argument
regarding Cesar=s testimony
is not persuasive.      Giving due deference to the fact-finder=s determination that appellant was sufficiently identified as the
robber, and after reviewing all the evidence, we conclude that the evidence is
factually sufficient to uphold this finding. 
We therefore hold that the evidence, when viewed neutrally, is not so
obviously weak or so greatly outweighed by contrary proof that it would not
support the finding of guilt beyond a reasonable doubt.  We overrule appellant=s sole point.

IV. Conclusion

Having overruled appellant=s sole point, we affirm the trial court=s judgment.           

 

 

PER CURIAM

 

PANEL F:    LIVINGSTON, WALKER, and MCCOY, JJ.

 

DO
NOT PUBLISH

Tex. R. App. P. 47.2(b)

 








DELIVERED:
October 5, 2006











[1]See Tex. R. App. P. 47.4.