Court of Appeals
Fourth Court of Appeals District of Texas
San Antonio




## MEMORANDUM OPINION

No. 04-10-00412-CR

Robert M. **WHITE**,
Appellant

v.

The **STATE** of Texas,
Appellee

From the 144th Judicial District Court, Bexar County, Texas
Trial Court No. 2008-CR-2772
Honorable Catherine Torres-Stahl, Judge Presiding

Opinion by:　Phylis J. Speedlin, Justice

Sitting:　　Catherine Stone, Chief Justice
　　　　　Sandee Bryan Marion, Justice
　　　　　Phylis J. Speedlin, Justice

Delivered and Filed:　July 20, 2011

AFFIRMED AS MODIFIED

Appellant Robert M. White appeals his conviction of burglary of a habitation with intent to commit aggravated assault on two issues, speedy trial and sufficiency of the evidence. We affirm the judgment of the trial court.

### BACKGROUND

On the night of May 26, 2007, Richard Araujo was in his trailer house with Maricela Romero, his girlfriend. Around 9:00 p.m., White began banging a metal object on the sides and

door of Araujo's trailer, while calling out threats that he was "going to get [Araujo]." According to Araujo, such harassment and verbal threats by White were customary ever since Araujo's involvement with Romero because White was her ex-boyfriend and lived in the same trailer park. In fact, a few hours earlier that same night, Araujo and White had fought unarmed outside Araujo's home after White had called Araujo outside. The police were called to end this earlier disturbance, but White left before they arrived. During the fight, White repeatedly struck Araujo, causing severe facial bruises that required treatment by EMS. In the interim between the fight and 9:00 p.m., Araujo and Romero remained inside the locked trailer in the hope that White would not return.

According to Araujo, White's reappearance outside his door at 9:00 p.m. confirmed Araujo's fear that White sought to complete his earlier assault. Rather than calling the police again, Araujo fashioned a makeshift spear by taping together a broom and a kitchen knife which he placed by the front door. When White kicked open the front door, Araujo thrust the spear at him. Araujo testified that White had only placed one foot inside his home when Araujo stabbed him; White retreated and ran off into the darkness. Araujo stated that White was holding a round, metal object when he kicked in the door.

Upon arriving at the scene, Officers Reygadas and Terrill discovered numerous bloodstains on Araujo's front porch and a blood trail leading from the doorway's threshold into Araujo's front yard. They also found bloodstains on the ground in White's front yard, as well as bloodstains on the handle end of a broken garden hoe lying near White's porch. The officers did not locate White that night.

Almost one year later, on April 8, 2008, White was indicted for burglary of a habitation with intent to commit aggravated assault against Araujo; a warrant for White's arrest was issued

the same day. According to White, he had returned to his permanent residence in Midland, Texas in May 2007; he was arrested and jailed in Midland from June to December 2007 for outstanding tickets. White testified he had no knowledge of the burglary charge until he was arrested for a routine traffic violation on February 21, 2009, at which time he was also arrested on the outstanding burglary warrant. White was arraigned on February 27, 2009, and appointed counsel on April 1, 2009. On May 20, 2009, White filed a pro se motion for speedy trial. The original trial setting for April 27, 2009 was reset to July 13, 2009 and then to October 12, 2009. White's counsel filed a motion to set aside the indictment on speedy trial grounds on October 12, 2009. After a fourth reset to February 1, 2010, trial ultimately began on May 3, 2010. At no time did either party move for a continuance. White waived his right to a jury, and proceeded with a bench trial. After hearing all the evidence, the court found White guilty and sentenced him to eight years' imprisonment plus a $1500 fine. White now appeals.

DISCUSSION

*Speedy Trial*

White first argues the trial court erroneously denied his motion to dismiss the indictment on federal and state speedy trial grounds. The federal and Texas constitutions both guarantee the right to a speedy trial for all criminal defendants. *See* U.S. CONST. amend. VI, XIV; TEX. CONST. art. 1, § 10; TEX. CODE CRIM. PROC. ANN. § 1.05 (West 2005). We analyze state and federal speedy trial claims under the *Barker* balancing test and weigh the conduct of both the prosecution and the defendant. *Barker v. Wingo*, 407 U.S. 514, 530 (1972); *Zamorano v. State*, 84 S.W.3d 643, 647-48 (Tex. Crim. App. 2002). The *Barker* test weighs four non-exclusive factors: 1) length of delay; 2) reason for delay; 3) defendant's assertion of speedy trial right; and 4) resulting prejudice to defendant. *Barker*, 407 U.S. at 530; *Cantu v. State*, 253 S.W.3d 273, 280

(Tex. Crim. App. 2008). Because no one factor is necessary or sufficient to find deprivation of the right to speedy trial, we independently weigh and balance these factors along with other relevant circumstances. *Zamorano*, 84 S.W.3d at 648. In reviewing the trial court's ruling, we review the court's findings on the factual components of the speedy trial claim for abuse of discretion and its resolution of the legal issues de novo. *Id.*; *Cantu*, 253 S.W.3d at 282. We presume the trial court resolved any disputed fact issues in a manner supporting its ruling, and defer to its implied findings of fact supported by the record. *Cantu*, 253 S.W.3d at 282.

*Length of Delay*

The length of delay between an initial charge and trial triggers a court's consideration of the other *Barker* factors if the extent of the delay is unreasonable enough to be presumptively prejudicial to the defendant. *Id.* at 281; *Zamorano*, 84 S.W.3d at 648. No specific length of delay automatically triggers the analysis, or constitutes a violation of the right to speedy trial. *Barker*, 407 U.S. at 527; *Hull v. State*, 699 S.W.2d 220, 221 (Tex. Crim. App. 1985). Delay sufficient for presumptive prejudice thus depends on the particular circumstances of the case. *Zamorano*, 84 S.W.3d at 649. The right to speedy trial runs from the moment the defendant is accused. *Phillips v. State*, 650 S.W.2d 396, 399 (Tex. Crim. App. 1983). Courts generally hold delays approaching one year are presumptively prejudicial. *Doggett v. United States*, 505 U.S. 647, 652 n.1 (1992); *Dragoo v. State*, 96 S.W.3d 308, 314 (Tex. Crim. App. 2003). Once the accused proves that the delay between accusation and trial crossed the threshold between "ordinary" and "presumptively prejudicial," a court must then weigh, among the other *Barker* factors, the extent to which the delay "stretches beyond the bare minimum needed" to make it presumptively prejudicial. *Dragoo*, 96 S.W.3d at 314 (quoting *Doggett*, 505 U.S. at 652).

Here, there was a twenty-five month delay between White's indictment when he became an "accused" and his trial, and a fifteen-month delay between his arrest and trial. The State concedes the fifteen-month period from White's arrest to trial suffices to warrant the full *Barker* analysis. We agree that either period of delay is unreasonable enough to be presumptively prejudicial, thereby triggering our consideration of the length of delay along with the other *Barker* factors. *See Cantu*, 253 S.W.3d at 281 n.21 (noting that post-accusation delays of one year or more have generally been found to be presumptively prejudicial).

*Reasons for Delay*

Once a defendant proves the delay is presumptively prejudicial, the burden shifts to the State to justify the length of delay. *Id.* at 280. The State, not the defendant, has the duty to bring the defendant to trial, and so it must prevent unreasonable delays. *Id.* at 282; *Barker*, 407 U.S. at 527. Courts assign different weights to different justifications based on their relative prejudice. *Id.* at 531. Deliberate delays by the State in order to harm the defense weigh heavily against the State, while neutral reasons for delay such as overcrowded court dockets weigh less heavily against the State. *Id.*

White cites the State's lack of prosecution while he was in custody for outstanding traffic tickets in Midland from June to December 2007, along with the State's submission of his DNA evidence for testing a mere two months before the May 3, 2010 trial, as evidence of the State's lack of justification for delaying his trial. However, since White was indicted for the burglary in April 2008, his six-month incarceration in 2007 is not part of the speedy trial delay because White was not yet accused of the burglary in 2007. In addition, White's counsel never claimed the State's delays were deliberate, and neither party sought a continuance. Ultimately, the trial court determined that clogged dockets were responsible for the delay. Undisputed, unintentional

delays from "overcrowded courts" are weighed "less heavily" against the State than its own deliberate delays. *See Cantu*, 253 S.W.3d at 279 n.7; *Phillips*, 650 S.W.2d at 400. As we defer to the trial court's findings of fact, and there is nothing in the record to the contrary, we conclude the court did not abuse its discretion in finding that "clogged dockets" were accountable for the delay. Delay due to an overcrowded court docket forms a neutral reason that weighs against the State, but not heavily. *See Cantu*, 253 S.W.3d at 279 n.7.

*Defendant's Assertion of his Speedy Trial Right*

The defendant has the burden of proving he diligently asserted his right to a speedy trial. *Id.* at 280-81. White argues the motion to dismiss for lack of a speedy trial filed by his counsel on October 12, 2009 served to alert the court to the excessive trial delay and to his desire for a speedy trial, rather than simply for a dismissal of the charge against him. Whether and how a defendant timely asserts his speedy trial right weighs heavily in determining whether he was deprived of that right. *Barker*, 407 U.S. at 531-32. Failure to timely and persistently assert the right increases the difficulty of proving a denial of speedy trial claim. *Dragoo*, 96 S.W.3d at 314. A defendant's expressed desire for dismissal rather than a speedy trial is relevant, and may attenuate the strength of a speedy trial claim. *Cantu*, 253 S.W.3d at 283; *Phillips*, 650 S.W.2d at 401.

White's motion expressly requested dismissal of the indictment, not a quick trial setting. His counsel filed no other requests for speedy trial during the period between October 2009 and May 2010; further, counsel did not set the motion for a hearing. In fact, the motion was not heard until six months later on the eve of trial. Moreover, at the pre-trial hearing on the day before trial, White's counsel agreed with the State's characterization of his motion as one in which "[White's] objective here isn't to have a speedy trial but it's to have his case rejected." Given

that White first learned of the burglary charge upon his traffic arrest in February 2009, White waited eight months before filing his motion to dismiss for lack of a speedy trial in October 2009.[1] Considering White's lack of diligence in asserting the right to a speedy trial and in bringing it to the court's attention by setting it for a hearing before the eve of trial, along with the motion's express request for dismissal rather than a quick trial, we conclude this factor carries only minimal weight in establishing a violation of White's right to a speedy trial. *See Dragoo*, 96 S.W.3d at 314-15.

*Prejudice Resulting from the Delay*

Finally, the defendant bears the initial burden of proving he suffered prejudice from the unreasonable trial delay. *Cantu*, 253 S.W.3d at 282. Prejudice is assessed in light of the interests that the right to speedy trial protects against: 1) oppressive pretrial incarceration; 2) anxiety and concern of the accused; and 3) the possibility that the defense will be impaired. *Barker*, 407 U.S. at 532; *Dragoo*, 96 S.W.3d at 315. The last factor is the most serious as it affects the fairness of the entire justice system. *Barker*, 407 U.S. at 532; *Dragoo*, 96 S.W.3d at 315. A defendant need not make a showing of actual prejudice, only some showing of prejudice. *State v. Munoz*, 991 S.W.2d 818, 826 (Tex. Crim. App. 1999). If a "prima facie" showing of prejudice is made, the burden shifts to the State to prove the accused suffered "no serious prejudice beyond that which ensued from the ordinary and inevitable delay." *Id.* (quoting *Ex parte McKenzie*, 491 S.W.2d 122, 123 (Tex. Crim. App. 1973)).

---

[1] As evidence of an earlier assertion of his speedy trial right, White cites us to his *pro se* motion for speedy trial filed on May 20, 2009. However, White was represented by counsel at that time, and no defendant is entitled to hybrid representation, i.e., representation partly by counsel and partly by himself. *See Robinson v. State*, 240 S.W.3d 919, 922 (Tex. Crim. App. 2007). A trial judge may therefore disregard a defendant's *pro se* motions when he is represented by counsel. *Id.*; *Floyd v. State*, 959 S.W.2d 706, 710 (Tex. App.—Fort Worth 1998, no pet.) (trial court was not required to consider *pro se* motion for speedy trial when defendant was represented by counsel). White's *pro se* motion for speedy trial thus receives no weight as evidence of an earlier assertion of his speedy trial right.

White claims he was prejudiced by the trial delay because he suffered anxiety and concern due to family deaths and problems, as well as economic losses, during the period of post-accusation delay and pre-trial confinement; he also asserts his defense was prejudiced by the loss of potential punishment witnesses. As to the first factor concerning oppressive pretrial incarceration, White testified he was jailed for fifteen months out of the twenty-five month delay from indictment to trial. Impairment of a defendant's liberty and its effects are the dispositive considerations in analyzing oppressive pretrial incarceration. *Munoz*, 991 S.W.2d at 828. White may thus have proven some oppressive pre-trial incarceration.

Second, White asserts that he suffered anxiety and concern because of family events that occurred during the twenty-five month post-accusation delay, specifically, the deaths of his brother, mother, and two aunts, and his 15 year-old daughter's pregnancy and drug use. At the hearing, White conceded that his anxiety only began upon his arrest and confinement in February 2009, when he learned he had been indicted for burglary in April 2008. Evidence of generalized anxiety which is no greater than the level of concern normally associated with a criminal charge is not sufficient proof of prejudice under the *Barker* test. *Cantu*, 253 S.W.3d at 286. As to White's anxiety and concern caused by the deaths in his family and his daughter's pregnancy and drug use during the post-accusation delay, White did not prove he suffered heightened anxiety from these events due to the delay or that the family events were in any way connected to his pretrial incarceration during the delay. *See id.* In fact, White testified that, prior to his incarceration, he was often absent from home because he commuted quarterly between Midland and San Antonio for work.

In addition, White relies on *State v. Burckhardt* in support of his claim that he suffered anxiety from pecuniary losses during the period of delay, specifically the loss of a truck and

painting contracts as well as potential foreclosure on his house. *See State v. Burckhardt*, 952 S.W.2d 100, 104 (Tex. App.—San Antonio 1997, no pet.). White correctly notes our finding of pecuniary anxiety in *Burckhardt*, yet overlooks the detailed testimony in that case about the particular contracts and dollar amounts lost. *See id.* Here, White offered no proof of any specific pecuniary losses beyond his general testimony that he lost painting contracts and income because he was incarcerated.

Finally, White asserts the delay prejudiced his case because he could not call his deceased relatives to testify on his behalf during the punishment phase of trial. When a defendant's speedy trial claim of prejudice depends on the current unavailability of witnesses, he must establish not only that the witnesses are unavailable, but that their testimony would have been material and relevant to his defense. *See Harris v. State*, 489 S.W.2d 303, 308 (Tex. Crim. App. 1973); *see also Marquez v. State*, 165 S.W.3d 741, 750 (Tex. App.—San Antonio 2005, pet. ref'd). White conceded that none of his deceased relatives had any personal knowledge of the events underlying the burglary charge, thereby removing any materiality of their testimony on the issue of guilt or innocence. At most then, the deceased relatives could have been character witnesses for White during the punishment phase of his trial. White has failed to make a prima facie showing that his ability to defend himself was impaired by the loss of this potential punishment testimony. *See Barker*, 407 U.S. at 534.

On this record, we must affirm the trial court's finding that White failed to carry his burden to make a showing of some prejudice as a result of the trial delay. While White presented some evidence of oppressive pretrial incarceration for fifteen months, he failed to show that the personal and pecuniary anxiety he suffered during the trial delay was beyond that inherent in a criminal prosecution and corresponding pretrial incarceration. Finally, White failed to make a

prima facie showing that his ability to defend himself against the burglary charge was impaired by the trial delay, which is the most serious sub-factor in the *Barker* prejudice analysis. Therefore, we conclude the prejudice factor of the *Barker* test weighs against White.

### *Balancing of the Factors*

Weighing the four *Barker* factors, the length of delay was presumptively prejudicial and excessive and weighs heavily against the State. However, there is no evidence of an intentional delay or bad faith by the State, and the trial court found the delay was due to the court's crowded docket which constitutes a neutral reason for the delay; therefore, the second factor weighs against the State, but not heavily. As to the third and fourth factors, White failed to show he diligently asserted his right to a speedy trial and that he was prejudiced by the trial delay. We conclude that the weight of the four *Barker* factors, when balanced together, is against finding a violation of White's right to a speedy trial. *See Dragoo*, 96 S.W.3d at 316. Therefore, the trial court did not err in denying White's motion to set aside the indictment for failure to afford a speedy trial. We overrule White's first issue.

### *Sufficiency of the Evidence*

In his second issue, White complains that the evidence is insufficient to prove his intent to commit aggravated assault by his exhibition of a deadly weapon during his entry of Araujo's residence; alternatively, White contends the evidence is insufficient to prove he "entered" the residence. As the Texas Court of Criminal Appeals recently held there is no separate factual sufficiency review, and we apply only the *Jackson v. Virginia*[2] legal-sufficiency standard to determine whether sufficient evidence exists on each element of the offense. *Brooks v. State*, 323 S.W.3d 893, 895 (Tex. Crim. App. 2010). We thus consider all the evidence in the light most favorable to the judgment and ask whether any rational trier of fact could have found the

---

[2] *Jackson v. Virginia*, 443 U.S. 307, 319 (1979).

essential elements of the offense beyond a reasonable doubt. *Id.* We defer to the factfinder's credibility and weight determinations as the sole judge of the witnesses' credibility and the weight to be given to their testimony. *Id.* at 899.

The elements of burglary of a habitation with intent to commit the felony of aggravated assault require that (1) a person (2) without the effective consent of the owner (3) enters a habitation (4) with intent to commit aggravated assault. TEX. PENAL CODE ANN. § 30.02(a)(1), (d) (West 2011). Aggravated assault occurs when a person intentionally, knowingly, or recklessly (1) causes serious bodily injury or (2) uses or exhibits a deadly weapon during commission of the assault. *Id.* § 22.02(a) (West 2011). White argues that the only evidence that ties him to a deadly weapon is Araujo's testimony that White was holding a "metal object" when he kicked in the front door; because Araujo was unable to give a more explicit description beyond ruling out that the object was a firearm, White argues Araujo's testimony fails to provide a sufficient basis for connecting White to the bloody, broken garden hoe found in the yard at White's trailer—the purported deadly weapon.

As the fact finder, the trial judge heard not only Araujo's testimony regarding White's exhibition of a "round," "metal object" that "[White] was going to hit me with" as he kicked in the door, but also Araujo's statement that he heard White using a "heavy metal object" to "[hit] the outside of the trailer all the way around" while threatening to "get" Araujo. Further, Araujo testified he was "scared" that White "was going to finish me off," and that White was "going to try to beat [him] up" with the object he saw White carrying. The bloodied garden hoe recovered from White's yard was admitted into evidence, as well as photos and samples of White's blood trail from Araujo's trailer to White's trailer. Finally, Officer Reygadas testified that both ends of the hoe were lethal, in that they could easily cause serious blunt force trauma and lacerations

requiring emergency care. Deferring to the trial judge's credibility and weight assessments, we hold a rational trier of fact could find beyond a reasonable doubt that White exhibited a deadly weapon in the course of entering Araujo's trailer.

White also argues that, while some blood drops were found on the doorframe itself, there is no evidence he committed an "entry" sufficient to constitute burglary of a habitation because no blood was found beyond the doorframe. In Texas, an "entry" occurs if any part of the body or any physical object connected with the body intrudes into a habitation. TEX. PENAL CODE ANN. § 30.02(b) (West 2011); *Ortega v. State*, 626 S.W.2d 746, 747 (Tex. Crim. App. 1981). Viewed in the light most favorable to the judgment, the evidence is sufficient to establish an entry. On direct examination, Araujo testified twice that, upon kicking open his door, White "stepped in" the trailer with his foot sufficiently to be "inside" before Araujo stabbed him with the spear. On cross-examination, Araujo maintained that the second fight with White occurred *in* Araujo's trailer rather than in his front yard. Further, Officer Terrill testified that the blood's location on the door's threshold qualified as being on the interior of the home:

> Q: ….[T]he blood that you described as on the threshold, could blood get on that part of the door without having being (sic) kicked in or opened?
>
> A: I wouldn't think so, ma'am.
>
> Q: Okay. So that's in the inside of the home?
>
> A:  Correct.
>
> Q: Because you can't get blood on that part of the frame, stoop, jam, whatever you want to call it, without it being opened?
>
> A: Yes, ma'am. The door is open and the blood was inside a few inches.

Based on this evidence, a rational trier of fact could find beyond a reasonable doubt that part of White's body intruded sufficiently far inside Araujo's trailer to constitute an "entry" within the meaning of Penal Code section 30.02(b). We overrule White's second issue.

Based on the foregoing reasons, we affirm the trial court's judgment.[3]

Phylis J. Speedlin, Justice

DO NOT PUBLISH

---

[3] A clerical error is apparent from the face of the judgment in that it states that White entered into a plea bargain for eight years and a $1500 fine; in fact, the record is clear that White pled "not guilty," and was convicted after a bench trial and sentenced to eight years' imprisonment and a $1500 fine. Accordingly, we modify the judgment to delete any reference to a plea bargain and to reflect that White's conviction followed a bench trial. TEX. R. APP. P. 43.2(b).